# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GLENROY LAVERN DILLON | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-1071-S |
| | § | |
| DALLAS COUNTY, TEXAS | § | |

### MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Dallas County, Texas's Rule 12(b)(6) Motion to Dismiss and Brief in Support ("Motion") [ECF No. 13]. The Court has reviewed the Motion, Plaintiff Glenroy Lavern Dillon's Brief in Opposition to the Motion ("Response") [ECF No. 20], Defendant's Reply to the Response [ECF No. 21], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

This lawsuit arises out of Plaintiff's alleged overdetention in the Dallas County Jail. First Am. Compl. ("Amended Complaint") [ECF No. 10] 1. On January 5, 2023, Plaintiff was arrested and charged with assault of a peace officer, obstruction or retaliation, and two counts of harassment of a public servant. *Id.* ¶¶ 18-22. He was held in the Dallas County Jail. *Id.* ¶ 23.

On May 4, 2023, Plaintiff entered into a plea agreement. *Id.* ¶ 24. Pursuant to that agreement, Plaintiff pleaded guilty to one count of harassment of a public servant, and the State of Texas dismissed the other three charges brought against Plaintiff. *Id.* ¶¶ 25-26. The same day, the state court in which Plaintiff's cases were pending accepted the plea agreement, ordered Plaintiff to serve two years of "deferred adjudication community supervision," and signed a written judgment. *Id.* ¶¶ 27-28.

According to Plaintiff, he should have been released "immediately" in accordance with the trial court's orders. *Id.* ¶ 29. However, the Dallas County District Clerk allegedly did not send the

necessary paperwork to the Dallas County Jail until July 19, 2023—over two months later. *Id.* ¶ 30. Plaintiff was released from jail that day. *Id.* ¶ 31.

Plaintiff claims that Defendant "has exhibited a pattern of similar overdetention since at least May 2023." *Id.* ¶ 35. Plaintiff points to a "recent survey" that concluded that 23 out of 63 cases between October 2024 and June 2025 "presented for potential overdetention by Dallas County." *Id.* ¶¶ 37-41. Plaintiff further alleges that Dallas County policymakers have been informed of the overdetention problem "by prosecutors, defense lawyers, detained inmates, the family and friends of detained inmates, and media outlets." *Id.* ¶¶ 42-43. Specifically, Plaintiff identifies a Dallas Morning News article detailing delays in releasing inmates in June 2023. *Id.* ¶ 45. Plaintiff attributes some of the blame to the rollout of a new courts management system in May 2023 but contends that the overdetention problem has continued since that time. *Id.* ¶ 44. Finally, Plaintiff names seven other inmates who allegedly were held past their release dates. *Id.* ¶¶ 50-70.

Based on the foregoing allegations, Plaintiff filed suit, asserting a single claim under 42 U.S.C. § 1983 ("Section 1983") for violations of his Fourth, Eighth, and Fourteenth Amendment rights.[1] *Id.* ¶¶ 77-88.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the

---

[1] In the Motion, Defendant briefly discusses whether Plaintiff's claim falls under the Fourth, Eighth, and/or Fourteenth Amendments. *See* Mot. 3. Because Defendant does not seek a ruling on this issue, and because the Court determines that the Motion should be granted on other grounds, the Court does not consider it here.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States[.]" *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the Constitution and laws of the United States and (2) that the deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted).

A municipal entity like Defendant cannot be held vicariously liable under Section 1983 for the individual acts of its employees. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citation omitted). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (alteration in original) (citation omitted).

As relevant here, there are two types of municipal liability claims. One type, as stated above, involves an identified policy or custom inflicting an injury. *See id.* The other type involves a failure to train or supervise that "amount[s] to a policy." *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021) (citation omitted). Plaintiff brings his Section 1983 claim under both theories, and Defendant argues that he has not stated a claim under either.

### A. Municipal Liability: Policy or Custom

To impose Section 1983 liability on Defendant via the policy or custom route, Plaintiff must sufficiently allege "a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Among other arguments, Defendant contends that Plaintiff has not identified a legally sufficient policy or custom. Mot. 6-16.

#### i. Official Policy or Custom

An official policy is most clearly established through a policy statement formally announced by an official policymaker. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citation omitted). When an official policy is not explicit, however, a persistent and

widespread practice by city officials or employees that is so common and well settled as to constitute a "custom" will suffice. *See id.* at 168-69.

Plaintiff does not appear to allege that a formal policy statement exists.[2] *See, e.g.*, Resp. 10 (setting forth the standard for establishing a custom and stating that "the [Amended] Complaint pleads specific facts showing a County-wide *practice* of untimely releases" (emphasis added)). Therefore, the Court considers only whether Plaintiff has adequately alleged a persistent and widespread practice that amounts to a custom. Where, as here, a plaintiff relies on prior incidents to establish a pattern, the plaintiff must plead facts demonstrating that the prior incidents "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [its] employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). The "pattern of abuses" must "transcend[] the error made in a single case." *Id.* at 850-51 (quoting *Piotrowski*, 237 F.3d at 582). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (alteration in original) (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely 'isolated instances.'" *Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

---

[2] Elsewhere in the Response, Plaintiff mentions "a de facto policy whereby employees were trained or required to hand-deliver judgment paperwork." Resp. 15. The Amended Complaint contains no allegations regarding this alleged policy, so the Court does not consider it here.

Plaintiff points to the following categories of incidents that he contends make up a pattern: (1) a survey detailing potential overdetentions between 2024 and 2025, Am. Compl. ¶¶ 37-41; (2) a July 20, 2023, Dallas Morning News article about overdetention, *id.* ¶¶ 45-46; and (3) the alleged overdetention of seven other named individuals, ¶¶ 50-70.[3] Plaintiff's allegations suffer from several deficiencies.

As an initial matter, many of the identified incidents occurred after Plaintiff's alleged overdetention, which lasted from May to July of 2023. The survey involved incidents from 2024 to 2025. *Id.* ¶ 38. Similarly, the alleged overdetention of Cynthis Willis, Dominique Jackson, and Uriah Clish took place in 2024 and 2025. *Id.* ¶¶ 62, 65, 68. As another district court held in a similar case, "Fifth Circuit precedent is clear that the court's analysis turns on '*prior* incidents.'" *Jackson v. Dallas County*, No. 3:25-CV-1369-X, 2025 WL 2970129, at *2 (N.D. Tex. Oct. 21, 2025) (quoting *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024)); *see also Peterson*, 588 F.3d at 851 ("A pattern . . . requires sufficiently numerous *prior* incidents[.]" (emphasis added) (internal quotation marks and citation omitted)); *Cano v. Bexar County*, 280 F. App'x 404, 406 (5th Cir. 2008) ("Of course, the investigations subsequent to the instant incident are not relevant because such incidents could not have informed Bexar County's judgment with respect to the instant claim." (cleaned up)).

Further, with respect to the Dallas Morning News article, Plaintiff quotes the article's finding that inmates waited longer to be released in June 2023 than in April 2023. Am. Compl. ¶ 45. This conclusion implies that the overdetention problem began after April 2023 (i.e., no earlier than May 2023) and coincided with, rather than preceded, Plaintiff's experience. Similarly, the

---

[3] In his Response, Plaintiff discusses "an additional lawsuit . . . not cited in his [A]mended [C]omplaint." Resp. 10 (citation omitted). Because this information was not included in Plaintiff's live pleading, the Court has not considered it.

6

incidents involving Rhyan Harris, Chris McDowell, Charles Joe Jackson, and Melissa Ray Molloy all occurred over a brief period of time between February and June 2023. Am. Compl. ¶¶ 50, 54, 57, 60. That time period largely overlaps with Plaintiff's detention.

But even if the Dallas Morning News Article and the detention of Harris, McDowell, Jackson, and Molloy could constitute prior incidents, they cannot be said to have "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (citation omitted). All of these events took place in the span of one year, 2023. And four specific incidents, along with the unknown number covered in the Dallas Morning News article, in "a jail that houses approximately 7,000 inmates and processes the release of hundreds each week," Resp. 15, do not constitute a legally sufficient pattern.

Moreover, Plaintiff does not provide the required similarity and specificity when discussing the other incidents. *Peterson*, 588 F.3d at 851 (citation omitted). In fact, Plaintiff emphasizes their differences: "Each of these incidents arose out of different courts in Dallas County, and different individual Dallas County employees were . . . involved in the actions and inactions leading to the unlawful overdetentions." Am. Compl. ¶ 71; *see also id.* ¶ 72 ("Relevant Dallas County employees were under the supervision of individual elected clerks . . . depending on the court[] as well as the elected Sheriff.").

With respect to the survey, as the *Jackson* court noted when considering the same document, Plaintiff "provides no factual development or context for these cases that would allow the Court to determine whether they were sufficiently similar to his own." 2025 WL 2970129, at *3; *see also York v. Welch*, No. 20-40580, 2024 WL 775179, at *4 (5th Cir. Feb. 26, 2024) (rejecting statistics that were "devoid of factual development and context"). Plaintiff also provides

no information regarding the specific cases, if any, discussed in the Dallas Morning News article, alluding only to the fact that, unlike Plaintiff's overdetention, the incidents covered in the story appear to have been caused by a "new system." Am. Compl. ¶ 46. Finally, Plaintiff does not provide the details of the identified individuals' overdetention experiences and instead repeats in conclusory fashion that they resulted from "the systemic policies, practices, and/or customs of [Defendant]." *Id.* ¶¶ 51, 54, 56, 59, 62, 65, 68.

In sum, Plaintiff has not alleged sufficiently numerous prior incidents and has not provided the requisite similarity and specificity. As such, Plaintiff has not identified a practice amounting to a custom.

### *ii. Policymaker and Moving Force*

If one prong of a plaintiff's policy-based municipal liability claim fails, the Court "need not consider whether [his] claim also fails the other two . . . prongs." *Brown v. Tarrant County*, 985 F.3d 489, 497 n.11 (5th Cir. 2021). Because Plaintiff has not alleged a policy or custom, the Court cannot and does not consider at this stage whether Plaintiff plausibly alleged a policymaker or that any policy or custom was the moving force behind his alleged overdetention. Plaintiff has not stated a claim for municipal liability based on a policy or custom at this time.

### ***B. Municipal Liability: Failure to Train or Supervise***

To impose Section 1983 liability on Defendant via the failure to train or supervise route, Plaintiff must plausibly allege that (1) Defendant failed to train or supervise the employees involved; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of Plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to Plaintiff's constitutional rights. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citation omitted). "[T]he elements required to prove a claim under" either the

8

failure to train or failure to supervise "theory are the same," and the Court considers them together. *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2021 WL 6884649, at *10 (N.D. Tex. Nov. 24, 2021) (citation omitted), *report and recommendation adopted by* 2022 WL 447085 (N.D. Tex. Feb. 14, 2022).

Among other things, Defendant challenges the third element, deliberate indifference. Mot. 20-21. Deliberate indifference requires more than "negligence or even gross negligence"—it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010) (citations omitted). To plausibly allege deliberate indifference, a plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. A court infers deliberate indifference "either from a pattern of constitutional violations or, absent proof of a pattern, from showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (internal quotation marks and citation omitted).

Plaintiff does not make any additional arguments in support of the existence of a pattern with respect to his failure to train or supervise claims; instead, he reiterates the same arguments the Court has already rejected. For the reasons stated above, Plaintiff has not alleged a pattern of constitutional violations related to the alleged training or supervision failures. Accordingly, Plaintiff fails to establish a pattern of similar violations that constitutes deliberate indifference.

It is unclear whether Plaintiff also attempts to rely on the single incident exception. *See* Resp. 13 ("[E]vidence of a *single* violation of federal rights . . . [can] trigger municipal liability." (third alteration in original) (citation omitted)). The exception "is generally reserved for those cases in which the government actor was provided no training [or supervision] whatsoever." *Peña*, 879 F.3d at 624; *see also Est. of Davis*, 406 F.3d at 386 ("We did find a single incident to suffice in *Brown v. Bryan County*, concluding that there was an utter failure to train and supervise." (citing 219 F.3d 450, 462 (5th Cir. 2000))). "[T]here is a difference between a complete failure to train and a failure to train in one limited area." *Peña*, 879 F.3d at 624 (cleaned up). Plaintiff alleges that Defendant's training and supervision were "insufficient," rather than nonexistent. *See, e.g.*, Am. Compl. ¶ 83; Resp. 14 (arguing that Defendant "failed to implement adequate training, practices, customs, and procedures"). Elsewhere, Plaintiff seems to take issue with the content of Defendant's training rather than the lack of training. *See* Resp. 15 ("[E]mployees were trained . . . to hand-deliver judgment paperwork . . . ."). Thus, Plaintiff cannot avail himself of the single incident exception.

Plaintiff has not plausibly alleged deliberate indifference either by pointing to a pattern or a single incident; therefore, he has not alleged a basis for municipal liability based on failure to train or supervise. With no theories of municipal liability remaining, the Court dismisses Plaintiff's Section 1983 claim against Defendant.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Dallas County, Texas's Rule 12(b)(6) Motion to Dismiss [ECF No. 13]. Because Plaintiff has requested leave to amend his Amended Complaint, *see* Resp. 18, and given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court **GRANTS** Plaintiff leave to amend his Amended Complaint. Plaintiff must file a second amended complaint by **March 13, 2026**. If a

second amended complaint is not filed within such time, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED February 27, 2026.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**